### MARY LEE ADAMS v. JAMES ERNEST ADAMS.

(Filed 14 October, 1964.)

**1. Appeal and Error § 24—**

A broadside assignment of error to the charge may be aided by a subsequent assignment of error which particularizes the objection to the charge, and the two assignments of error in this case are held sufficient to present the question of error in the failure of the court to charge the law applicable to specified aspects presented by the evidence.

**2. Divorce and Alimony § 8—**

Where the evidence tends to show that plaintiff and defendant lived together for a period of four days after a reconciliation, and defendant testifies to the effect that at the end of the four-day period he packed his belongings and left, without any contention that he left because plaintiff ordered him to get out, the court is not required to charge the jury on the law that would have been applicable if defendant had left because of plaintiff's order for him to do so, even though the testimony of another witness might be susceptible to the interpretation that plaintiff did order defendant to leave the home.

**3. Divorce and Alimony § 3—**

Where plaintiff's action for subsistence and counsel fees is predicated upon defendant's leaving plaintiff after a four-day period of reconciliation, and defendant seeks to justify his leaving plaintiff at the end of the four-day period only on the basis of what occurred during that period and does not plead condonation, the court properly excludes evidence tending to show that defendant left plaintiff prior to the period of reconciliation because of abusive language.

APPEAL by defendant from *Farthing, J.*, January 27, 1964, Schedule "A" Civil Session of MECKLENBURG.

Plaintiff instituted this action May 27, 1963, under G.S. 50-16 to recover reasonable subsistence and counsel fees. She alleged, based on G.S. 50-7(1), that defendant abandoned her on April 26, 1963, without just cause, justification or excuse. Defendant's answer was a general denial of plaintiff's said allegations.

Plaintiff and defendant were married May 28, 1937. They lived together as husband and wife, "with periods of separation," until April 26, 1963. Their two children (sons) are now of age. In April, 1963, the older, 26, lived in the home at 504 East Tremont Avenue, Charlotte, N. C. The younger lived in Montana.

In April, 1963, plaintiff, 49, was, and had been for approximately twenty years, an employee of Nebel Knitting Company; and defendant, 52, was, and had been for approximately twelve years, employed by Akers Motor Lines as "a long line driver." Defendant's route was between Charlotte and Boston, Massachusetts. His work was such that

he lived on the road "about 80 per cent of the time." In April, 1963, plaintiff was sole owner of the Tremont Avenue residence. Some years back, defendant had conveyed to her his interest in this property.

On Monday, April 22, 1963, there was pending in Mecklenburg Superior Court a prior action plaintiff had instituted against defendant under G.S. 50-16. In connection therewith, plaintiff and defendant were in the Mecklenburg Courthouse on the afternoon of Monday, April 22, 1963. There was "a reconciliation" between plaintiff and defendant and a consent judgment dismissing the pending action was signed. Plaintiff was to get his clothes from his sister's home in Statesville and thereafter return to the Tremont Avenue residence.

Defendant returned to the Tremont Avenue residence the evening of Monday, April 22nd. From then until Friday, April 26th, defendant lived there and resumed marital relations with plaintiff. During this period, plaintiff and the son continued work in their respective employments. Defendant had been unable to go out on his run to Boston and therefore was not at work in his regular employment. During this period, at the Tremont Avenue residence, defendant performed certain chores, for example, he tore down the dog house, mended the fence, spaded a garden plot and set out tomato plants. On Friday, April 26th, after plaintiff and the son had gone to work, defendant left and did not return. In defendant's words: "The next morning between 8 and 9 I packed my belongings and put them in my automobile and I drove off." Thereafter, when not "on the road," he lived in a rented room in Concord. Since Friday, April 26th, and for a period prior thereto, defendant has made no contribution for the support of plaintiff.

Plaintiff's evidence tends to show the relationship between plaintiff and defendant in the home during defendant's four-day stay was friendly; that there was no disturbance or quarrel; that nothing in her conduct constituted a provocation for defendant to leave; and that she "had no idea he was going to leave" and was surprised and upset when she discovered he had left.

Defendant's evidence tends to show that plaintiff, on the night defendant returned home, screamed and hollered at him for approximately forty minutes, demanding money, cursing the courts, demanding that he sell his 1961 Falcon Ford; that on Thursday night, April 25th, she again demanded money, threatened to have defendant put in jail, repeatedly cursed defendant's aged mother and defendant's sister, referring to them as "whores"; and that, while he said nothing that night, he drove off the next morning "because that was all (he) could stand" and has "never been back."

The fact and the date of marriage were stipulated.

The court submitted and the jury answered one issue, to wit: "Did the defendant abandon the plaintiff as alleged in the complaint? Answer: Yes."

After verdict, the court heard further evidence bearing upon the health, respective incomes, etc., of plaintiff and defendant. After such hearing, and based on said verdict, judgment was entered "that the defendant pay each and every week to the plaintiff the sum of Ten ($10) Dollars per week . . . for the partial support of the plaintiff . . . until further order of the Court; that the defendant be taxed with the costs of this action."

Defendant excepted and appealed.

*Plumides & Plumides for plaintiff appellee.*
*Richard M. Welling for defendant appellant.*

BOBBITT, J. Defendant's Assignment of Error #4 asserts in general terms that the court's charge did not comply with G.S. 1-180. Defendant's Assignment of Error #5 asserts "the Court erred in failing to give a complete definition of 'abandonment' as applied to the facts in this case, and wholly ignored the defendant's evidence which tended to prove that the plaintiff ordered the defendant to leave the home, and the Court failed to state such evidence, and failed to explain to the jury the law pertaining to this evidence as it bore on the issue in the case of abandonment." While Assignment of Error #4, considered alone, is broadside, Assignment of Error #5 may be and will be treated as a particularization of Assignment of Error #4.

Defendant's contention (AE 5) is based solely on the testimony of Mrs. Ruth Cook. Mrs. Cook testified: There was "just a drive" between her home (502 East Tremont Avenue) and the Adams home, the houses being 20-25 feet apart; that her kitchen was next to the Adams kitchen, "just a little angling"; and that, although next door neighbors for fourteen and a half years, she had "never said anything or spoken to that lady," the plaintiff. In her original testimony, Mrs. Cook stated that, sometime during defendant's said four-day stay, she was in her kitchen and overheard a conversation between plaintiff and defendant in their kitchen; and that during the course of their conversation she heard plaintiff tell defendant she "had to have money," that he "had to give her money," and "what the Judge would do and what her lawyer would do to him." She testified she did not hear any curse words or profanity and that "(t)he demands for money, about courts, and the lawyers" was "just about all" she could remember. Later, Mrs. Cook was recalled and testified: "Since I was on the witness stand yesterday

I recollect some statements I heard made the week of the 22nd of April. They were discussing money. She wanted money and he didn't have any. It was during this time she made the statement, 'Well, hell, get out.' "

We do not understand Mrs. Cook's supplemental testimony to mean that she overheard any *full conversation* between plaintiff and defendant but that, at sometime during *a conversation* in which plaintiff said she wanted money and defendant said he did not have any, she heard plaintiff say, "Well, hell, get out." Presumably, plaintiff and defendant were in the kitchen when the statement attributed to her by Mrs. Cook was made. Possibly, plaintiff was telling defendant to get out of the kitchen. Be that as it may, defendant did not testify he left because plaintiff ordered him to do so or that plaintiff told him, "Well, hell, get out," but that he left solely for the reasons indicated in our preliminary statement. It was neither required nor appropriate for the judge to instruct the jury as to the law *that would be applicable* if plaintiff had ordered defendant to leave and defendant had left for that reason when defendant did not so testify or contend.

The issue was clear and simple. Did the defendant leave without just cause, justification or excuse, or did he leave because of provocative and abusive conduct of plaintiff of the nature indicated in our preliminary statement?

No error is assigned to the court's instructions as given. Moreover, a careful examination of the charge leaves the impression that defendant was not prejudiced by deficiencies, if any, in the court's instructions.

Defendant's Assignment of Error #3 asserts that the court erred in excluding testimony of Mrs. Cook as to what occurred prior to April 22, 1963. The excluded testimony of Mrs. Cook, summarized, was as follows: During the fourteen and one-half years prior to April 22, 1963, she (Mrs. Cook) had heard "rows" between plaintiff and defendant in which plaintiff was demanding money and in which defendant was insisting plaintiff had taken all he had; that on some unidentified occasion she heard plaintiff say to defendant, "to hell, get out then"; that the statements by plaintiff to defendant were made "in a scream"; and that plaintiff had "the shrillest, screechingest voice" Mrs. Cook had ever heard.

Whether the exclusion of said portion of Mrs. Cook's testimony was prejudicial to defendant need not be determined. Certainly, its vagueness as to time and circumstances renders it of doubtful probative value. Be that as it may, the exclusion thereof was proper.

In urging the competency of the excluded portion of Mrs. Cook's testimony, defendant cites decisions of this Court relating to condonation. "Condonation in law is the conditional forgiveness by a husband or wife of a breach of marital duty by the other, whereby the forgiving party is precluded, so long as the condition is observed, from claiming redress for the breach so condoned." *S. v. Manon*, 204 N.C. 52, 167 S.E. 493. Condonation is a specific affirmative *defense* to be alleged and proved by one who is charged with a breach of marital duty. *Phillips v. Phillips*, 223 N.C. 276, 25 S.E. 2d 848. For full discussion, see Lee, North Carolina Family Law, Volume 1, § 87.

Legal principles applicable to condonation are not relevant. Here, the complaint is the only pleading that alleges a breach of marital duty, to wit, defendant's alleged abandonment of plaintiff without just cause, justification or excuse. Defendant's answer consists solely of a general denial. It contains no allegations to the effect the separation prior to April 22nd was caused by wrongful conduct on the part of plaintiff. Moreover, defendant in his testimony seeks to justify his leaving plaintiff on Friday, April 26th, on the basis of what occurred during the four-day period.

Defendant's remaining assignments of error are formal and do not require discussion.

No error.